FILED
2010 Apr-13  AM 10:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN  DIVISION

| | | |
|---|---|---|
| **JOHN DOE I, JOHN DOE III,** | ] | |
| **INDIVIDUALLY AND AS FATHER** | ] | |
| **AND NEXT FRIEND OF STEVEN DOE,** | ] | |
| **A MINOR CHILD, AND JOHN DOE IV,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | **CV-07-BE-478-S** |
| | ] | |
| **v.** | ] | |
| | ] | |
| **CITY OF PELHAM, ALABAMA AND** | ] | |
| **ALLAN WADE,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION

This matter is before the court on the Defendant City of Pelham's "Motion to Strike Claim for Punitive Damages" (doc. 12); Defendant Castillo's "Motion to Dismiss" (doc. 16); "Motion to Dismiss Amended Complaint of Defendant City of Pelham" (doc. 25); and "Motion to Dismiss Amended Complaint of Defendant Allan Wade." (doc. 26).  For the reasons stated in this memorandum opinion, the motion to strike is due to be GRANTED; Castillo's motion to dismiss is due to be GRANTED; the City of Pelham's motion to dismiss is due to be GRANTED in part and DENIED in part; and Wade's motion to dismiss is due to be GRANTED in part and DENIED in part.

## I.  PROCEDURAL HISTORY

Plaintiffs Ismael Venegas, formerly identified as John Doe I, and Hector Hernandez, formerly identified as John Doe III, are Hispanic undocumented aliens who reside in the City of

Pelham, Alabama.  On March 14, 2007, they[1] filed suit against the City of Pelham; Allan Wade,

the City's Chief of Police; and Susan Castillo, an employee of the Pelham Municipal Court who

worked as a Spanish language translator.  Hernandez not only brought claims on his own behalf

but also on behalf of his minor son, Ortiel Hernandez, formerly identified as Steven Doe.  The

Complaint objected to Defendants' alleged acts of conducting unconstitutional searches, arrests,

and pre-trial jailings of Hispanic immigrants.  It contained eight counts: Counts 1-4 allege

violations of various provisions of the United States Constitution based on racial and ethnic

discrimination, brought pursuant to § 1983; Count 5 alleges, pursuant to § 1985,  the existence of

a conspiracy among Wade, Castillo, Police Department, and Pelham City officials to deprive

Plaintiffs of constitutional rights and civil rights and engage in intentional discrimination; Count

6 alleges that Defendants discouraged immigration in violation of § 30 of Alabama's

constitution; Count 7 claims that Defendants committed the tort of outrage/infliction of

emotional distress in violation of Alabama law; and Count 8 alleges that Defendant committed

the tort of false imprisonment in violation of Alabama law.  The Complaint also asserted class

claims.

On March 15, 2007, Plaintiffs filed a motion requesting, among other matters, leave to

proceed anonymously.  (doc. 3).  Defendants subsequently stipulated to their agreement that

Plaintiffs be allowed to proceed anonymously, at least for the time being, and based on that

stipulation, the court granted the request to proceed anonymously.  As part of their stipulation,

Defendants expressly reserved the right to withdraw their consent regarding Plaintiffs'

---

[1]In addition to these Plaintiffs, additional Plaintiffs joined in that suit who have since
been dismissed: John Doe II and Jane Doe, who filed suit individually and as parents and next
friends of Janie and Jimmy Doe.

proceeding anonymously, and the court noted this reservation of right.  (doc. 6).

Defendants filed separate motions to dismiss the original Complaint (docs. 8, 9, & 12), and, because Defendant Wade's motion raised his entitlement to qualified immunity, he also filed a motion to stay all proceedings in this case pending a ruling on the qualified immunity issue (doc. 11).  At the same time, the City moved to strike all punitive damages directed against it, a motion that remains pending before this court (doc. 12).  On April 9, 2007, this court granted the motion to stay.[2]

Plaintiffs did not file a response to Castillo's motion to dismiss, and that motion remains pending before this court.  During the briefing process on the other motions to dismiss, Plaintiffs requested permission to amend the Complaint (doc. 20), which the court granted in May of 2007.

On June 1, 2007, Plaintiffs filed an Amended Complaint, adding among other things, Jose Alberto Lopez Miranda, formerly identified as John Doe IV,  as representative party Plaintiff. Defendants City of Pelham and Wade filed separate  motions to dismiss the Amended Complaint (docs.  25 & 26, respectively).  Although the court entered a briefing schedule on the motions to dismiss the Amended Complaint, Plaintiffs filed no response by the deadline.  Accordingly, the court subsequently entered an Order to Show Cause why the case should not be dismissed for want of prosecution (doc. 32).  Plaintiffs then filed a response identical to their original brief in opposition to the motions to dismiss the first Complaint, directed solely at the motions to dismiss of the City of Pelham and Wade  (doc. 33).  Defendants City of Pelham and Wade filed a joint reply (doc. 34). Defendant Castillo filed  "Supplement in Support of Motion to Dismiss," noting

---

[2] The stay inadvertently removed the case from the court's "tickler" system, resulting in an unintended delay in addressing these motions, for which the court apologizes.

that Plaintiffs had filed no response to her motion to dismiss the original complaint.  The

Amended Complaint did not list Castillo as a Defendant in its style or its text and made no new

allegations against Castillo, although it did incorporate by reference allegations contained in the

original complaint.   All three motions to dismiss remain pending before this court.  However,

Plaintiffs filed a Notice of Dismissal (doc. 7) pursuant to Federal Rule of Civil Procedure

41(a)(1)(A)(i), stating that they were voluntarily dismissing without prejudice two Plaintiffs

designated as John Doe II and Jane Doe as party Plaintiffs.

On February 19, 2010, Defendants filed a motion to require Plaintiffs to proceed in their

true identifies. (doc. 45).

On March 10, 2010, the court held a hearing on pending motions.  The next day, the court

entered an Order granting Defendants' motion to require Plaintiffs to proceed in their true

identities and ordering the substitution of the true names on the record.  The order also required

Plaintiffs' counsel to notify the court by March 25, 2010 whether Ortiel Hernandez, who has

apparently reached the age of majority, intended to pursue any claims that might remain.  (doc.

49).  Plaintiffs' counsel did not respond by the deadline, and the court subsequently entered an

Order requiring Plaintiffs to show cause on or before April 5, 2010 why Ortiel Hernandez's

claims should not be dismissed.  (doc. 54).  Because the court received no response by the

deadline, the court subsequently entered an Order dismissing his claims and dismissing him as a

party Plaintiff.  (doc. 55).

Also on March 11, 2010, the court entered an Order requiring Plaintiff Jose Alberto

Lopez Miranda, formerly identified as "John Doe IV," to show cause in writing by March 25,

2010 why his claims should not be dismissed for abandonment of those claims based on his

4

failure to cooperate with his attorney. (doc. 48).  The court directed the clerk to mail a copy of

that Order to Miranda at his last known address.  (doc. 48).  Because Plaintiff Miranda failed to

respond, the court subsequently entered an Order dismissing Plaintiff Miranda's claims and

dismissing him as a party Plaintiff.  (doc. 53).

Thus, at the time of this opinion, the Plaintiffs that remain are Ismael Venegas, formerly

identified as John Doe I; and Hector Hernandez, formerly identified as John Doe III.

## II.  LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint.

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short

and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's

claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957)

(quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement, but Rule

8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (quoting *Conley*, 355 U.S. at 47).   It does, however, "demand[ ] more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* ___ U.S. ___,

129 S. Ct. 1937, 1949 (2009).   Pleadings that contain nothing more than "a formulaic recitation

of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that

are based merely upon "labels or conclusions" or "naked assertions" without supporting factual

allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Iqbal*, 129 S. Ct. at 1948 (quoting and explaining its decision in *Twombly*, 550 U.S. at

570).  To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*  (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court has recently identified "two working principles" for the district court to use in applying the facial plausibility standard.  The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however,  the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. C. at 1949-50.   The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1150.  Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts.  That task  is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.*  If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed.  *Id.*

As discussed later in this opinion, pleading standards increase in the Eleventh Circuit where a plaintiff asserts a claim under 42 U.S.C. § 1983 and a defendant raises his entitlement to

6

qualified immunity.  *See Amnesty Int'l., USA v. Battle*, 559 F.3d 1170, 1179-80 (11th Cir. 2009).

## III.  DISCUSSION

As a preliminary matter, the court notes that Plaintiffs' Complaint as amended is a classic "shotgun" pleading, the type of filing that the Eleventh Circuit has "roundly, repeatedly, and consistently condemn[ed] for years."  *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 (11th Cir. 2008).  It contains eight counts that purport to incorporate by reference the first 61 paragraphs in the Complaint, and many of the counts include bunched references to multiple sections of and amendments to state and federal constitutions.  Although this Complaint as amended includes multiple Plaintiffs, it does not state, where appropriate, which Plaintiffs are linked to particular counts, but lumps them all together with the cavalier use of the word "Plaintiffs."   Such pleadings ignore the requirements of Fed. R. Civ. P. 8(b)(1) & (2) and 10(b). In many cases involving shotgun pleadings, the court will require plaintiffs to amend their pleadings.  However, Plaintiffs here have already amended the pleadings once, and because of the initial delay resulting from the inadvertent placement of this case on inactive status, the court is reluctant to further delay a ruling, especially with qualified immunity issues pending. Therefore, the court has done its best to untangle the web of interlocking claims and to create order out of disorder, and also held a hearing on March 10, 2010 to clear up remaining issues.

### A.  City of Pelham's "Motion to Strike Claim for Punitive Damages"

The City of Pelham filed a motion to strike all punitive damages asserted against the City. In their opposition brief, Plaintiffs acknowledge that punitive damages are not ordinarily awardable against a municipality pursuant to 42 U.S.C. §§ 1983 and 1985 and state that they are not claiming punitive damages against the City in the federal claims based upon those statutes

and set forth in Counts 1-5.  (doc. 21, at 9).   Plaintiffs bring additional claims against the City

pursuant to Alabama law, and Alabama law provides that punitive damages are not recoverable

against a municipalities.  Ala. Code § 6-11-26 (1975).  Accordingly, the court finds that the

motion to strike (doc. 12) is due to be GRANTED, and all claims for punitive damages against

the City of Pelham are due to be DISMISSED WITH PREJUDICE.

**B.  Castillo's Motion to Dismiss**

Defendant Castillo filed a motion to dismiss the original complaint in this case, and

Plaintiffs did not oppose that motion or name Castillo in the subsequent amendment to the

complaint.  At the hearing, Plaintiffs' counsel acknowledged that this motion was due to be

granted.  Accordingly, the court finds that Defendant Castillo's motion to dismiss (doc. 16) is

due to be GRANTED, and the Defendant Castillo is due to be DISMISSED WITH PREJUDICE

as a party Defendant.

**C.  Chief Wade's Motion to Dismiss**

**1.  Official Capacity Claims[3] - Counts 1-7**

The court finds that the motion to dismiss as to all claims against Chief Wade in his

official capacity is due to be GRANTED; those official capacity claims asserted in Counts 1-7

are due to be DISMISSED WITH PREJUDICE.  *See Busby v. City of Orlando*, 931 F.2d 764,

776 (11th Cir. 1991); *Clifton v. Ga. Merit Sys.*, 478 F. Supp. 2d 1356, 1362 (N.D. Ga. 2007).

---

[3]In the section of the Complaint entitled "The Parties," Plaintiffs identify Defendant
Wade and state that they sue him individually *and* in his official capacity.  Counts 1-7 assert
claims against Defendant Wade, but do not otherwise specify capacity.

**2.  Claims for Monetary Damages Pursuant to Alleged Violations of the Alabama Constitution - Counts 2-6**

The court finds that the motion to dismiss as to all claims in against Chief Wade for monetary damages brought pursuant to alleged violations of the Alabama Constitution are due to be GRANTED; those claims are due to be DISMISSED WITH PREJUDICE.  *See Matthews v. Ala. Agric. & Mech. Univ.*, 787 So. 2d 691, 698 (Ala. 2000).  This finding also applies to the City's motion to dismiss as to such claims for monetary damages.

**3.  Counts 3, 4, 6, & 7**

The court finds that motion to dismiss as to all claims in Counts 3, 4, 6, and 7 asserted against Chief Wade is due to be GRANTED; Plaintiffs failed to respond to Defendants' motion to dismiss regarding these claims, and thus, the court finds that they have abandoned these claims.  *See, e.g., Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000).  Therefore, the court finds that these counts are due to be DISMISSED WITH PREJUDICE.  This finding also applied to the City's motion to dismiss.

**4.  Count 5- Conspiracy Brought Pursuant to § 1985**

In Count 5 of the Complaint as amended, Plaintiffs assert that Defendants engaged in a conspiracy to deprive Plaintiffs of their constitutional rights, brought pursuant to 42 U.S.C. § 1985.  The original Complaint alleged that the only "conspirators" were officers or employees of the City of Pelham, and thus, the allegations ran afoul of the intracorporate conspiracy doctrine. *See Denney v. City of Albany*, 247 F.3d 1172, 1190-91 (11 th Cir. 2001).  Plaintiffs' amendment to the Complaint attempted to rectify the problem by adding new co-conspirators: the City of Hoover Police Department, unnamed deputies of the Shelby County Sheriff's Department and

unnamed agents of the United States Department of Immigration and Customs Enforcement.

However, at the hearing on this motion, Plaintiffs' counsel once again identified the other co-

conspirators as officers and employees of the City of Pelham.  In light of that position, the court

finds that the conspiracy allegations are barred by the intracorporate conspiracy doctrine.

Alternatively, the court finds that the conspiracy allegations do not meet the specificity standards

required when pleading a conspiracy.  *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir.

1984).  Therefore, the court finds that Chief Wade's motion to dismiss as to Count 5 is due to be

GRANTED and Count 5 is due to be DISMISSED WITH PREJUDICE.  This finding applies as

well to the City's motion to dismiss.

### 5.  The Remaining Federal Claims against Chief Wade:  Counts 1& 2

Qualified Immunity and the Federal Claims

Chief Wade has asserted the defense of qualified immunity as to the federal claims

brought pursuant to § 1983 and asserted against him in his individual capacity.   "The defense of

qualified immunity completely protects government officials performing discretionary functions

from suit in their individual capacities unless their conduct violates 'clearly established statutory

or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. Reno*,

325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730 (2002)).  The

Supreme Court has explained that "[t]he purpose of qualified immunity is to allow government

officials to carry out their discretionary duties without the fear of personal liability or harassing

litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating

the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citations

omitted).  Acknowledging that immunity is not only a defense from liability but also from

10

defending a lawsuit, the Supreme Court and Eleventh Circuit have repeatedly emphasized that a district court should grant immunity at the motion to dismiss stage *if* the complaint fails to allege the violation of a clearly established constitutional right.  *Gonzalez*, 325 F.3d at 1233; *Chesser v. Sparks*, 284 F.3d 1117, 1121 (11th Cir. 2001); *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997); *see Iqbal*, 129 S. Ct. at 1945-47.

Plaintiffs do not assert that Chief Wade personally participated in the events made the basis of this lawsuit[4]; their allegations in Counts 1-2 that Chief Wade violated their Constitutional rights rest upon the *policies* that Wade allegedly set for the Pelham police department  – intentionally targeting Hispanics for selective law enforcement and unlawful search and seizure.

(1)  Equal Protection under the Fourteenth Amendment - § 1983

In Count 1, Plaintiffs claim that Wade established a Pelham Police Department policy that targeted Hispanics for selective law enforcement to intimidate and harass Hispanics and force their relocation out of the City of Pelham.  They cite specific instances of Pelham police officers' application of that policy against the named Plaintiffs, and claim that this policy caused the Pelham police officers to violate the Plaintiffs' rights to equal protection under the Fourth and Fourteenth Amendments to the Constitution of the United States.

Defendants rest their defense to the equal protection claims on arguments that these claims in Plaintiffs' Complaint as amended fail to satisfy Eleventh Circuit heightened pleading

---

[4]The law does not hold government officials liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.  *Iqbal*, 129 S.Ct. at 1948; *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  Thus, as Plaintiffs do not allege that Chief Wade *personally* participated in the events made the basis of this lawsuit, liability must rest on alleged discriminatory directives or policies that he put in place.

11

requirements.  The court disagrees, finding that Plaintiffs' Complaint as amended does meet those pleadings requirements *as to claims in Count 1 asserting violations of the Equal Protection Clause of the Fourteenth Amendment*.  Defendants assert no further arguments regarding their entitlement to qualified immunity as to Count 1.  The court finds that, although Chief Wade would have been performing a discretionary function in establishing police department policy, a reasonable person knew or should have known that the policies he allegedly instituted – targeting Hispanics for selective law enforcement – violated the clearly established constitutional law set forth in the Equal Protection Clause of the Fourteenth Amendment.  *See Wren v. United States,* 517 U.S. 806, 813 (1996) (finding that the Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race").  Further, for the reasons discussed at the hearing, the court finds that the *Younger* abstention doctrine does not make abstention appropriate as to these Fourteenth Amendment claims.  Thus, the court finds that Wade's motion to dismiss is due to be DENIED as to such claims in Count 1.

(2)  Equal Protection under the Fourth Amendment - § 1983

In Count 1, Plaintiffs also assert equal protection claims under the Fourth Amendment to the United States Constitution.  The court finds that the motion to dismiss is due to be GRANTED as to all *equal protection claims* brought pursuant to the *Fourth Amendment* to the Constitution of the United States.  *See Engquist v. Oregon Dep't of Agric.*, ___ U.S. ____, 128 S. Ct. 2146, 2160 (2008) (drawing a distinction between the Equal Protection Clause and the protections of the Fourth Amendment)**;** *Whren v. United States*, 517 U.S. 806, 813 (1996) (stating that "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment.").  These claims are due to be

DISMISSED WITH PREJUDICE.  In light of this ruling, the court need not engage in qualified immunity analysis as to this claim.

(3) Unlawful Search and Seizure under the Fourth Amendment - § 1983

In Count 2, Plaintiffs assert that Chief Wade established a policy to target Hispanics and, pursuant to that policy, Pelham police officers "stopped, seized and searched Plaintiffs without reasonable suspicion that any violation or crime had been committed or was likely to be committed, in violation of the Fourth Amendment guarantee against unreasonable searches and seizures."  (Pls.' Compl. doc. 1, at 13 ¶ 68).  To the extent that Plaintiffs attempt to assert claims against Chief Wade for intentionally discriminatory policies, the Supreme Court has stated that those claims must be brought under the Fourteenth Amendment's Equal Protection Clause and are improper when brought under the Fourth Amendment.  *See Whren*, 517 U.S. at 813.  To the extent that Plaintiffs attempt to hold Chief Wade liable for each alleged individual search and seizure constitutional violation under a *respondeat superior* theory, the Supreme Court has also held such claims to be improper.  *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978) (finding that the law does not hold government officials liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*).

At the hearing, the court deferred ruling on the Fourth Amendment claims brought on behalf of Hector and Ortiel Hernandez, and indicated that it was still considering whether those Plaintiffs had stated a claim sufficient to withstand dismissal.  The Complaint allegations indicated that Ortiel Hernandez  may indeed have been seized and deported without any process at all.  However, upon further reflection, the court finds that, although the allegations in the Complaint as amended may plead a constitutional deprivation as to the officers who were

13

involved in Ortiel Herndandez's seizure and deportation *but who are not parties in this suit*, they do not plead a Fourth Amendment violation as to *these Defendants* in light of the Supreme Court's holding and reasoning in *Whren*.

Accordingly, the court finds that Plaintiffs have failed to state a claim under the Fourth Amendment against Chief Wade – and, for that matter, the City of Pelham – and thus, the motion to dismiss is due to be GRANTED as to claims in Count 2 for violation of the Fourth Amendment; those claims are due to be DISMISSED WITH PREJUDICE. In light of this ruling, the court need not engage in qualified immunity analysis.

### 6. Remaining Alabama claim: Unlawful Search and Seizure under the Alabama Constitution

Count 2 also alleges that Defendants' alleged unreasonable search and seizure of Plaintiffs violated Section 5 of the Alabama Constitution of 1901. The court has dismissed claims for monetary damages brought under Alabama Constitution, but Plaintiffs' Complaint as amended also requests "an order [with accompanying injunctive relief] declaring that the policy, procedure and official action of Defendants . . .violates Section 5 of the Alabama Constitution of 1901." (Pls.' Compl. doc. 1, at 18). Defendants' brief addressed the claim for money damages under the Alabama Constitution but did not address equitable state constitutional claims. Further, neither Chief Wade's motion nor Defendants' brief addressed state agent immunity. Accordingly, the court DENIES the motion as to the claim in Count 2 alleging a violation of Section 5 of the Constitution of the State of Alabama, to the extent that claim requests injunctive and declaratory relief. Further, for the reasons discussed at the hearing, the court finds that the *Younger* abstention doctrine does not make abstention appropriate.

14

In sum, the court GRANTS the motion to dismiss as to all claims against Chief Wade *except* (1) the claim in Count 1 asserting that he established policies whose implementation against these Plaintiffs violated their rights under the Equal Protection Clause of the Fourteenth Amendment; and (2) the claim in Count 2 asserting that Defendants' alleged unreasonable search and seizure of Plaintiffs violated Section 5 of the Constitution of the State of Alabama to the extent that it requests injunctive and declaratory relief.  The court will DISMISS WITH PREJUDICE all claims against Chief Wade except those claims listed above.  The court DENIES the motion as to those excepted claims.  This ruling applies as well to the City's motion.

**D.  City of Pelham's Motion to Dismiss**

**1.  Previous Rulings that also Apply to the City of Pelham**

a. Count 1:  Although qualified immunity analysis and heightened pleading analysis do not apply to Count 1 claims asserted against the City, the following findings as to Count 1 *do* apply to the City:

- the motion to dismiss is due to be GRANTED as to all *equal protection claims* brought pursuant to the *Fourth Amendment* to the Constitution of the United States; and

- the *Younger* abstention doctrine does not make abstention appropriate as to the equal protection claims brought pursuant to the Fourteenth Amendment.

b. Count 2 - the motion to dismiss is due to be GRANTED as to all claims against the City in Count 2 *except* the claim for injunctive and declaratory relief

15

for violation of Section 5 of the Constitution of the State of Alabama; with that

exception noted, the court will DISMISS WITH PREJUDICE all other claims

against the City in that count.  The motion is due to be DENIED as to that

excepted claim. The *Younger* abstention doctrine does not make abstention

appropriate as to this state constitutional claim.

c.   Claims for money damages brought pursuant to alleged violations of the

Alabama Constitution in Counts 2-6: the court finds the City's motion to dismiss

is due to be GRANTED as to these claims, and will DISMISS them with

PREJUDICE.

d.  Counts 3, 4, 6, and 7: the court finds the City's motion to dismiss is due to be

GRANTED as to the abandoned claims in these counts, and the court will

DISMISS these counts WITH PREJUDICE.

e.  Count 5- Conspiracy Brought Pursuant to § 1985 - the court finds that the

City's motion to dismiss this count is due to be GRANTED; the court will

DISMISS this count with PREJUDICE.

**2.  Remaining Claim in Count 1 - Equal Protection Clause under the Fourteenth Amendment**

The court finds that Plaintiffs' Complaint as amended states a claim against the City only

as to assertions that City policies violated *the Equal Protection Clause of the Fourteenth

Amendment*. Thus, the court will GRANT the motion to dismiss as to all claims asserted against

the City in Count 1 *except* the claim brought under the Equal Protection Clause of the Fourteenth

Amendment; it will DISMISS WITH PREJUDICE all other claims asserted against the City in

Count 1.  The court will DENY the motion as to that excepted claim.

### 3.  Count 8 - False Imprisonment

Plaintiffs named the City but not Chief Wade in their claim for false imprisonment. In its motion for summary judgment and at the hearing, the City argued that Plaintiffs' false imprisonment claim is an intentional tort, and thus, that the City is immune from liability for that tort under § 11-47-190 of the Alabama Code.  However, the City's brief did not address this claim, and perhaps because that brief omitted any such discussion, Plaintiffs did not address it in response.

The tort of false imprisonment "consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty."  Ala. Code § 6-5-170 (1975).  "'[F]or there to be false imprisonment, there must be some direct restraint of the person,' although '[a]ny exercise of force, or the express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment."  *Crown Central Petroleum Corp. v. Williams*, 679 So. 2d 651, 653 (Ala. 1996).  Contrary to the City's insistence that false imprisonment must necessarily consist of an intentional act and is thus always barred by § 11-47-190 , the Supreme Court of Alabama has recognized that a plaintiff may state a viable false imprisonment claim against a city.  *Borders v. City of Huntsville*, 875 So. 2d 1168, 1183-84 (Ala. 2003) (quoting *Franklin v. City of Huntsville*, 670 So. 2d 848, 852 (Ala. 1995)).  The City did not address this count in its brief to explain why the claim fails in this particular case. Therefore, the court DENIES the motion as to Count 8.

17

## V.  CONCLUSION

In conclusion, the court finds as follows:

•       that the City's motion to strike punitive damages (doc. 12) is due to be
        GRANTED; the court will STRIKE all punitive damages asserted against the
        City.

•       that Defendant Castillo's motion to dismiss (doc. 16) is due to be GRANTED; the
        court will DISMISS WITH PREJUDICE all claims against Defendant Castillo
        and DISMISS her as a party Defendant.

•       that Chief Wade's motion to dismiss (doc. 26) is due to be GRANTED in part and
        DENIED in part.  The court will GRANT the motion as to all claims asserted
        against Chief Wade in his *official capacity* and DISMISS those claims WITH
        PREJUDICE.  The court will GRANT the motion as to all claims asserted against
        him individually *except* (1) the claim asserting violations of the Equal Protection
        Clause of the Fourteenth Amendment to the United States Constitution; and (2)
        the claim in Count 2 for injunctive and declaratory relief alleging a violation of
        Section 5 of the Constitution of the State of Alabama.  Thus, the court will
        DISMISS WITH PREJUDICE all claims asserted against Chief Wade
        individually *except* those two claims. The court will DENY his motion to dismiss
        as to those excepted claims.

•       that the City of Pelham's motion to dismiss (doc. 25) is due to be GRANTED in
        part and DENIED in part.  The court will GRANT the motion as to all claims
        *except* (1) the claim in Count 1 asserting violations of the Equal Protection Clause

of the Fourteenth Amendment to the United States Constitution; and (2) the claim in Count 2 for injunctive and declaratory relief alleging a violation of Section 5 of the Constitution of the State of Alabama; and (3) the claim in Count 8 for false imprisonment. Thus, the court will DISMISS WITH PREJUDICE all claims against the City *except* those three claims.  The court will DENY the motion as those excepted claims.

The case will proceed with Plaintiffs' (1) claim in Count 1, asserted against Chief Wade and the City of Pelham, that the policies of targeting Hispanics for selective enforcement of the laws violated the Equal Protection Clause to the Fourteenth Amendment of the United States Constitution; (2) claim in Count 2 for injunctive and declaratory relief alleging a violation of Section 5 of the Constitution of the State of Alabama, also asserted against both Chief Wade and the City of Pelham; and (3) claim in Count 8, asserted against the City only, alleging false imprisonment.

Dated this 13th day of April, 2010.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

19